UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JED HORWITT, ESQ., AS RECEIVER FOR SENTINEL GROWTH FUND MANAGEMENT, LLC, RADAR ALTERNATIVE FUND LP, and RADAR ALTERNATIVE MASTER FUND SPC<br><br>Plaintiff,<br><br>v.<br><br>RAJO CORP. D/B/A RAJO CAPITAL MANAGEMENT, VICTOR J. DANILEVICS, and TOBYN INGEBRIGSTON,<br><br>Defendants. | Civil Action No.<br>_____ |

## **COMPLAINT**

Plaintiff Jed Horwitt, Esq., in his capacity as Court-appointed receiver (the "Receiver") for Sentinel Growth Fund Management, LLC ("Sentinel"), Radar Alternative Fund LP ("Radar LP") and Radar Alternative Master Fund SPC ("Radar SPC" and, together with Radar LP, collectively, the "Radar Funds," and the Radar Funds together with Sentinel, collectively, the "Receivership Entities"), by and through his undersigned counsel, Zeisler & Zeisler, P.C., as and for his complaint in the above-captioned action (the "Action") against Rajo Corp. d/b/a Rajo Capital Management ("Rajo"), Victor J. Danilevics ("Danilevics") and Tobyn Ingebrigtson ("Ingebrigtson," and, together with Rajo and Danilevics, the "Defendants"), alleges as follows:

### **SUMMARY OF CLAIMS:**

1. This lawsuit is part of the Receiver's continuing efforts to trace, recapture and return investor proceeds misappropriated from investment funds managed and operated as a Ponzi

scheme by Mark J. Varacchi ("Varacchi") and other individuals affiliated with the Receivership Entities.

2. Rajo originally became involved with Varacchi and Sentinel on or about October, 2013, and on October 23, 2013, Rajo made its initial investment in the amount of $100,000. In total, from December 16, 2013, through November 11, 2016, Varacchi, in furtherance of his Ponzi scheme, caused Sentinel to make a series of transfers to Rajo or for Rajo's benefit in the aggregate amount of $204,627 (together with all other transfers by Varacchi and Sentinel to Rajo or for Rajo's benefit, the "Rajo Transfers"). The excess transferred to Rajo in the amount of $104,627 represents Rajo's "net winnings" from the Ponzi scheme. As part of the Rajo Transfes, Varacchi caused Sentinel to make certain transfers to Ingebrigtson or Danilevics which were, upon information and belief, for the benefit of Rajo.

3. Thus, the Rajo Transfers constitute intentional and constructive fraudulent transfers pursuant to the Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. §§ 52-552 *et seq*. ("CUFTA"). Accordingly, the Receiver, by this action, seeks to avoid these fraudulent transfers and recover their value for the benefit of the Receivership Estate and their creditors.

4. Alternatively, the Receiver asserts a cause of action for unjust enrichment against the Defendants because they unjustly failed to pay the Receivership Entities for the benefits received for the Rajo Transfers, and equity and good conscience require the full restitution of the Rajo Transfers paid by Sentinel to the Defendants so they may be distributed by the Receiver to the creditors of the Receivership Estate.

## THE PARTIES:

### The Receiver:

5. The Receiver is a natural person residing and doing business in Connecticut.

6. On May 1, 2017, the United States District Court for the District of Connecticut (Bolden, J.) entered its Order Appointing Receiver (the "Receivership Order") which, *inter alia*, appointed the Receiver to serve as receiver for the Receivership Entities.

7. The Receivership Order entered in that certain civil action captioned *Securities and Exchange Commission v. Mark J. Varacchi, et al.* (Civil Action No.: 3:17-cv-00155-VAB) (the "SEC Action").

8. The Receivership Order authorizes the Receiver, with prior court approval and in consultation with the SEC, to, *inter alia,* "investigate, prosecute, defend, intervene in or otherwise participate in, compromise, and/or adjust actions in any state, federal or foreign court or proceeding of any kind as may in his discretion, and in consultation with SEC counsel, be advisable or proper to recover and/or conserve Receivership Assets." (Receivership Order ¶ 19.)

### The Receivership Entities:

9. Sentinel is a limited liability company organized and existing under the laws of the State of Delaware. Sentinel's last known business address was located in Stamford, Connecticut.

10. Radar LP is a private fund organized and existing under the laws of the State of Delaware.

11. Radar SPC is a private fund organized and existing under the laws of the Cayman Islands.

**The Defendants:**

12.     The defendant, Rajo, is a corporation organized and existing under the laws of the State of Arizona.  Upon information and belief, Rajo maintains a business address at 9901 N. 50th St., Paradise Valley, AZ.

13.     The defendant, Danilevics, is a natural person who resides, upon information and belief, at 11815 N. Hillcrest Dr., Sun City, AZ 85351.

14.     The defendant, Ingebrigtson, is a natural person who resides, upon information and belief, at 18625 N. 45th Pl., Phoenix, AZ 85050.

## JURISDICTION AND VENUE:

**Jurisdiction and Venue in the SEC Action**

15.     On February 2, 2017, the SEC filed the SEC Action against the Receivership Entities and Varacchi in this District pursuant to Sections 20(b) and 22(a) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77t(d), 77v(a), Sections 21(d)(1), 21(e) and 27 of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78u(d), 78u(e), 78aa, and Sections 209(d), 209(e) and 214 of the Investment Advisers Act of 1940 (the "Advisers Act") 15 U.S.C. §§ 80b-9(d), 80b-9(e), 80b-14.

16.     Venue is proper for the SEC Action in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, Section 214 of the Advisers Act, 15 U.S.C. § 80b-14, and 28 U.S.C. § 1391(d), because, among other things, certain acts or transactions constituting the violations of the federal securities laws by Varacchi and the Receivership Entities occurred in this District and because Sentinel maintained offices in Connecticut and Varacchi maintained a residence in Connecticut.

17.     Pursuant to the Receivership Order, in the SEC Action, on October 27, 2017, the Receiver requested leave to commence this Action, which this Court granted by its order entered on October 31, 2017.

**Jurisdiction and Venue in This Action**

18.     This Court has original jurisdiction over the SEC Action, to which the claims in this Action relate.  Further, this Action concerns property under the Court's exclusive jurisdiction and the Receiver has brought this Action in furtherance of his appointment and in the performance of his duties as directed by this Court.  Therefore, this Court has subject matter jurisdiction over this Action under 28 U.S.C. § 1367.

19.     This Court has personal jurisdiction over the Defendants pursuant to 28 U.S.C. §§ 754 and 1692, as well as under state law, because the Defendants have transacted business within the State of Connecticut, with Varacchi, Sentinel and others, and the Defendants have committed tortious acts within the State of Connecticut.

20.     Venue is proper in this District under 28 U.S.C. §§ 754 and 1391(b)(2), because a substantial part of the events giving rise to the Receiver's claim against the Defendants occurred within this District and because this Action is ancillary to the SEC Action.

**THE PONZI SCHEME**:

21.     From its inception in approximately September, 2013, through its discovery in December, 2016, Varacchi operated a classic Ponzi scheme defrauding various individuals and businesses into investing in certain "programs" maintained through the Radar Funds, and then using the fruits of such fraud to repay prior investors or to pay his own personal expenses and other personal liabilities.

22. Although Sentinel and Varacchi (who owned, managed and controlled Sentinel) were engaged in the business of providing investment advice concerning securities for compensation—and, therefore, "investment advisors" within the meaning of the Investment Advisors Act of 1940, 15 U.S.C. §§ 80b-1 *et seq.*—neither Sentinel nor Varacchi was registered as an investment advisor with the SEC.

23. Notwithstanding, Varacchi, through Sentinel, solicited investments by offering a platform through which they could invest with "up-and-coming hedge fund managers" (the "Portfolio Managers"). Varacchi purported to offer "master" funds that included multiple series managed by the Portfolio Managers.

24. The first private "master" fund was Radar LP with the first deposit into a brokerage account for Radar LP being made on September 25, 2013. Varacchi later formed Radar SPC and the first deposit into a brokerage account for Radar SPC was made on December 9, 2015.

25. The Portfolio Managers were offered sub-accounts within the Radar Funds which provided the appearance—to the Portfolio Managers and the Investors—that their investments had been segregated for their exclusive benefit.

26. Varacchi and Sentinel offered two distinct "programs" through the Radar Funds. The first involved a long/short equity strategy and the other involved an initial public offering investment program. Each of these were allocated across the Portfolio Managers.

27. At all relevant times, the aggregate amount of the Receivership Entities' liabilities far exceeded the value of their unencumbered assets.

28. While, to a limited extent, Varacchi and various Portfolio Managers used the Radar Funds to trade in securities, the revenues generated could not repay the aggregate amounts due investors or even significant withdrawals when requested by Investors.

29. Instead, in order to perpetuate his Ponzi scheme, Varacchi used funds received from newly defrauded investors to repay prior investors.

30. At various times when investors sought written confirmation of their accounts and investment performance, Varacchi transferred funds between sub-accounts within the Radar Funds in order to produce statements that falsely represented to investors that their particular sub-account possessed the proceeds of their investments.

31. Varracchi also used available margin borrowing from the prime broker for the Radar Funds to acquire positions in the sub-accounts. By failing to disclose to investors that the securities had been purchased on margin, Varacchi falsely created the appearance that the investors' sub-accounts possessed their unencumbered assets.

32. In total, Sentinel received $42.6 million in third party deposits between August, 2013, and December, 2016, and transferred $24.8 million to the Radar Funds. The Radar Funds received another $21.1 million directly from third parties.

33. The Receiver has determined that approximately 25 investors who deposited funds with the Receivership Entities have unredeemed principal investments totaling approximately $20 million.

34. The Receiver estimates that Varacchi used approximately $11 million of the Receivership Entities' funds to acquire assets for himself and to pay for his own personal expenses and other liabilities.

35. Upon information and belief, Varacchi also misappropriated the Receivership Entities' funds for his personal purposes as follows:

    a. Approximately $500,000 in cash withdrawals;

    b. Approximately $50,000 in debit card withdrawals

    c. Approximately $3.1 million in transfers to Varacchi's personal bank accounts;

    d. Approximately $33,000 in payments to Varacchi's family members;

    e. Approximately $3.7 million in private equity investments or loans on behalf of Varacchi;

    f. Approximately $425,000 in payments to business partners or associates of Varacchi;

    g. Approximately $640,000 in payments to persons or entities who made personal loans to Varacchi; and

    h. Approximately $50,000 to a foundation that is a 501(c)(3) nonprofit organization, for which Varacchi served as a board member.

36. As a result of Varacchi's exploitation of the Receivership Entities to operate a Ponzi scheme, and his misappropriation and diversion of the Receivership Entities' funds and other assets, Varacchi has at all relevant times been liable to the Receivership Entities, and the Receivership Entities constitute creditors of Varacchi.

37. Furthermore, since Sentinel failed to transfer to Radar LP funds deposited with Sentinel for investment with Radar LP, and otherwise misappropriated and diverted funds in which

Radar LP held an interest, and harmed Radar LP, at all relevant times, Radar LP was a creditor of Sentinel.

38. Upon the entry of the Receivership Order in the SEC Action, the Receivership Entities were freed from Varacchi's domination and control, and the Receiver assumed control over the Receivership Entities in his place.

39. Varacchi admitted to operating a Ponzi scheme through the Receivership Entities. Varacchi consented to the entry of Judgment in favor of the SEC in the SEC Action and, in the separate criminal proceeding pending before the Southern District of New York, pled guilty to criminal conduct relating to certain matters alleged in the Complaint commencing the SEC Action. (*See* SEC Action, Doc. No. 11-1, Consent to Entry of Judgment of Defendants Mark J. Varacchi and Sentinel Growth Fund Management, LLC and Relief Defendants Radar Alternative Fund LP and Radar Alternative Master Fund SPC.)  More specifically, in *United States v. Varacchi*, Crim. No. 1:17-cr-00076-NRB (S.D.N.Y.), Varacchi pleaded guilty to a criminal information charging him with counts of securities fraud, wire fraud, and conspiracy to commit securities and wire fraud. "The criminal information charged Defendant Varacchi with misappropriating, for the benefit of himself and others, funds that investors provided Sentinel for the purchase and sale of securities, and then obtaining funds from other investors in order to make payments to investors whose funds he had misappropriated."  (*Id*. ¶ 2.)

40. Based, in part, upon Varacchi's consent to judgment, on May 1, 2017, the District Court in the SEC Action entered its Judgment as to Defendants Mark J. Varacchi and Sentinel Growth Fund Management, LLC and Relief Defendants Radar Alternative Fund LP and Radar Alternative Master Fund SPC.

**THE FRAUDULENT TRANSFERS:**

41. Rajo originally became involved with Varacchi and Sentinel on or about October, 2013. On October 23, 2013, Rajo made its initial investment in the amount of $100,000.

42. Through Varacchi's and Sentinel's platform, Rajo shortly thereafter received a return on its investment in the amount of $47,584.10 on December 16, 2013.

43. Rajo continued to participate in Varacchi's and Sentinel's investment platform through 2016 when the Ponzi scheme was uncovered.

44. In total, from December 16, 2013, through November 11, 2016, Varacchi, in furtherance of his Ponzi scheme, caused Sentinel to make a series of transfers to Rajo or for Rajo's benefit in the aggregate amount of $204,627.

45. Rajo had invested only $100,000 in exchange for the Rajo Transfers. The excess transferred to Rajo in the amount of $104,627 represents Rajo's "net winnings" from the Ponzi scheme.

46. As part of the Rajo Transfes, Varacchi caused Sentinel to make the following transfers to Ingebrigtson or Danilevics which were, upon information and belief, for the benefit of Rajo:

| Date: | Amount: | Transferee: |
|---|---|---|
| 1/20/2015 | $7,000 | Ingebrigtson |
| 4/14/2015 | $12,500 | Ingebrigtson |
| 5/28/2015 | $6,000 | Ingebrigtson |
| 6/3/2015 | $3,000 | Danilevics |

47. An itemized schedule of all of the Rajo Transfers is appended hereto as **Exhibit A**.

48. Furthermore, the Defendants did not provide Sentinel with reasonably equivalent value in exchange for the Rajo Transfers.

10

## FIRST COUNT: INTENTIONAL FRAUDULENT TRANSFER
## (CONN. GEN. STAT. § 52-552e(a)(1)) AS TO ALL DEFENDANTS

49. The Receiver realleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

50. The Rajo Transfers constitute transfers of interests in property by Sentinel and Radar LP within the meaning of §§ 52-552(b)(12) of CUFTA, which were improperly caused by Varacchi through his domination and control over them in furtherance of his Ponzi scheme.

51. The Rajo Transfers occurred during the course of the Ponzi scheme perpetrated by Varacchi, when Varacchi diverted and misappropriated Sentinel's and Radar LP's corporate assets and commingled investor money among the insolvent Sentinel and Radar LP entities. The Rajo Transfers were made with money misappropriated and diverted from Sentinel and Radar LP by Varacchi. Varacchi directed the Rajo Transfers through Sentinel at a time when Sentinel and Radar LP were insolvent. Accordingly, at all relevant times herein, Sentinel and Radar LP had a claim to the funds used to make the Rajo Transfers.

52. At all relevant times, Sentinel and Radar LP were "creditors" of Varacchi within the meaning of § 52-552(b)(4) of CUFTA, and Radar LP was a "creditor" of Sentinel.

53. Each of the Rajo Transfers was made to or for the benefit of Rajo.

54. Varacchi sought to conceal the Rajo Transfers.

55. Varacchi and, through Varacchi's domination and control, Sentinel, absconded with the funds necessary to make the Rajo Transfers.

56. The value of the consideration received by Sentinel and Radar LP in exchange for the Rajo Transfers was not reasonably equivalent to the value of the property transferred and the obligations incurred.

57.	Sentinel and Radar LP were insolvent at the time the Rajo Transfers were made.

58.	In substantial part, the Rajo Transfers occurred shortly before and/or shortly after substantial debt was incurred by the Receivership Entities.

59.	The Rajo Transfers were made by Varacchi and others to further and perpetuate the Ponzi scheme operated through the Receivership Entities, and were made with the actual intent to hinder, delay or defraud some or all of the Receivership Entities' then-existing creditors.

60.	The Rajo Transfers were (i) made on or within four years before the date of this Action or (ii) were discovered, and could only have been reasonably discovered, by the Receiver within one year before the date of this action.

61.	The Rajo Transfers constitute fraudulent transfers avoidable by the Receiver pursuant to § 52-552e(a)(1) of CUFTA and the Rajo Transfers are recoverable from the transferees, the Defendants, pursuant to § 52-552h of CUFTA.

62.	As a result of the foregoing, pursuant to Conn. Gen. Stat. §§ 52-552e(a)(1), 52-552h and 52-552i(b), the Receiver is entitled to a judgment against the Defendants: (i) avoiding the Rajo Transfers; (ii) recovering the Rajo Transfers, or the value thereof, from the transferees, the Defendants, or each of the Defendants to the extent they were the person for whose benefit the transfer was made, and (iii) for such other remedies enumerated in § 52-552h.

## SECOND COUNT: CONSTRUCTIVE FRAUDULENT TRANSFER
## (CONN. GEN. STAT. § 52-552e(a)(2)) AS AGAINST ALL DEFENDANTS

63.	The Receiver realleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

64.	Sentinel and Radar LP did not receive reasonably equivalent value in exchange for making the Rajo Transfers.

65. Varacchi caused Sentinel and Radar LP to make the Rajo Transfers at a time when Sentinel and Radar LP were engaged or were about to engage in a business or a transaction for which the remaining assets of Sentinel and Radar LP were unreasonably small in relation to the business or transaction, or Sentinel and Radar LP intended to incur, or believed or reasonably should have believed that they would incur, debts beyond their ability to pay as they became due.

66. The Rajo Transfers constitute fraudulent transfers within the meaning of, and in violation of Conn. Gen. Stat. § 52-552e(a)(2).

67. As a result of the foregoing, pursuant to Conn. Gen. Stat. §§ 52-552e(a)(2), 52-552h and 52-552i(b), the Receiver is entitled to a judgment against the Defendants (i) avoiding the Rajo Transfers; (ii) recovering the Rajo Transfers, or the value thereof, from the transferees, the Defendants, or each of the Defendants to the extent they were the person for whose benefit the transfer was made, and (iii) for such other remedies enumerated in § 52-552h.

### THIRD COUNT: CONSTRUCTIVE FRAUDULENT TRANSFER (CONN. GEN. STAT. § 52-552(f)) AS AGAINST ALL DEFENDANTS

68. The Receiver realleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

69. Varacchi caused Sentinel and Radar LP to make the Rajo Transfers at a time when they were insolvent, or Sentinel and Radar LP became insolvent as a result of the transfer and obligations incurred.

70. The Rajo Transfers constitute fraudulent transfers within the meaning of, and in violation of Conn. Gen. Stat. § 52-552f.

71. As a result of the foregoing, pursuant to Conn. Gen. Stat. §§ 52-552h and 52-552i(b), the Receiver is entitled to a judgment against the Defendants (i) avoiding the Rajo

Transfers; (ii) recovering the Rajo Transfers, or the value thereof, from the transferees, the Defendants, or each of the Defendants to the extent they were the person for whose benefit the transfer was made, and (iii) for such other remedies enumerated in § 52-552h

## FOURTH COUNT: UNJUST ENRICHMENT
## AS AGAINST ALL DEFENDANTS

72. The Receiver realleges and incorporates by reference all of the foregoing paragraphs as if fully set forth herein.

73. The Defendants benefited from the receipt of money from the Receivership Entities in the form of the Rajo Transfers alleged herein which was the property of the Receivership Entities and their investors, and for which the Defendants did not adequately compensate the Receivership Entities or provide value.

74. The Defendants unjustly failed to repay the Receivership Entities for the benefits received from the Rajo Transfers.

75. The enrichment was at the expense of the Receivership Entities and, ultimately, at the expense of the Receivership Entities' creditors.

76. Equity and good conscience require full restitution of the monies received by the Defendants from the Receivership Entities on account of the Rajo Transfers for distribution to the creditors.

77. As a result of the foregoing, the Receiver, on behalf of the Receivership Entities and its creditors, is entitled to an award in an amount to be determined at trial.

**WHEREFORE**, the plaintiff, Jed Horwitt, Esq., as receiver for Sentinel Growth Fund Management, LLC, Radar Alternative Fund LP and Radar Alternative Master Fund SPC, respectfully requests the Court enter judgment in favor of the Receiver and against the Defendants, Rajo Corp. d/b/a Rajo Capital Management, Victor J. Danilevics and Tobyn Ingebrigtson, as follows:

    a. Pursuant to §§ 52-552e(a)(1) and 52-552h, the avoidance of the Rajo Transfers;

    b. Pursuant to §§ 52-552e(a)(2) and 52-552h, the avoidance of the Rajo Transfers;

    c. Pursuant to §§ 52-552f and 52-552h, the avoidance of the Rajo Transfers;

    d. Pursuant to § 52-552i(b), the recovery of the Rajo Transfers or the value thereof from the Defendants as and to the extent the first transferee of such transfers, and each of the Defendants to the extent they were the person for whose benefit the transfer was made;

    e. An attachment or other provisional remedy against the assets transferred or other property of the transferees;

    f. A temporary restraining order and preliminary and permanent injunctions against further disposition by the Defendants and any subsequent transferees of the assets transferred or of other property;

    g. The appointment of a receiver to take charge of the assets transferred or of other property of the transferees;

    h. Reasonable attorneys' fees;

    i. All applicable pre-judgment and post-judgment interest;

  j.  Costs; and

  k.  Such other and further relief as the Court deems just and proper.

Dated at Bridgeport, Connecticut, this 13th day of December, 2017.

          Respectfully submitted,

         JED HORWITT, ESQ., RECEIVER

        By:*/s/ Stephen M. Kindseth*
         Stephen M. Kindseth (ct14640)
         Zeisler & Zeisler, P.C.
         10 Middle Street, 15th Floor
         Bridgeport, CT  06604
         Telephone: 203-368-4234 X 245
         Facsimile: 203-549-0903
         Email: skindseth@zeislaw.com
         His Attorneys